| | |
|---|---|
| United States of America, | CR 11-3496-TUC-CKJ (GEE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Israel Paramo-Villasana, | |
| Defendant. | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

The District Court referred this case to the Magistrate Judge for hearing on the defendant's motion to suppress. The defendant, Israel Paramo-Villasana, argues his Fourth Amendment rights were violated when he was asked for identification when the vehicle in which he was riding was stopped for a traffic violation. (Doc. 19) A hearing on the motion was held on February 7, 2012.

**Charge:**

The defendant, Israel Paramo-Villasana, is charged with reentry after deportation in violation of Title 8, United States Code §1326 (enhanced by 8 U.S.C. § 1326(b)(2)).

**Motion to Suppress:**

The defendant argues his Fourth Amendment rights were violated when he was asked for identification when the vehicle in which he was riding was stopped for a traffic violation.

1  (Doc. 19) He moves that this court suppress all evidence seized as a result of the Fourth
2  Amendment violation.

3      The court finds the questioning of the defendant did not violate his Fourth
4  Amendment rights and his motion to suppress should be denied.

6  **EVIDENCE:**

7  ***Officer Russell Bocks***

8      Russell Bocks is a highway patrol officer currently stationed in Tucson, Arizona. (Tr.
9  pp. 9-10)

10      On September 15, 2011, Bocks performed a traffic stop on a white Ford pickup truck
11  pulling a homemade utility trailer loaded with ocotillo plants. (Tr. pp. 8, 11) Bocks observed
12  that the brake lights on the trailer were inoperable in violation of state traffic laws. (Tr. p.
13  11) Bocks was driving a marked police vehicle equipped with strobe lights. (Tr. pp. 11, 22)
14  He was in uniform and equipped with a firearm, two magazines, a yellow Taser, a baton, a
15  set of handcuffs, and a portable radio. (Tr. pp. 23-24)

16      The vehicle stopped in the Home Depot parking lot. (Tr. p. 11) Bocks approached the
17  vehicle and spoke with the driver requesting license, registrations for the vehicle and trailer,
18  and insurance. (Tr. p. 14) He explained that the trailer had a brake light violation. (Tr. p. 14)

19      While the driver was looking for his documentation, Bocks asked the passenger, the
20  defendant, for identification. (Tr. p. 15) The defendant gave Bocks a Presbyterian ID card.
21  (Tr. p. 15) Bock asked if he had anything else, but the defendant answered, "No." (Tr. p. 15)
22  Bocks performed a wants/warrants search for the driver and passenger and found nothing
23  outstanding. (Tr. p. 16)

24      Bock found the Presbyterian ID card suspicious, and he called for the assistance of
25  Border Patrol. (Tr. pp. 16, 31) The call to Border Patrol was made approximately eight or
26  nine minutes after the stop. (Tr. p. 16-17) Border Patrol responded within 30 minutes from
27  the time they received the call. (Tr. p. 17)

28

1     Bocks was alert during the stop but remained professional and calm. (Tr. p. 30-31)
He did not raise his voice while talking to the defendant. (Tr. p. 30-31) He did not specifically tell the passenger he was free to leave at the beginning of the traffic stop. (Tr. p. 28-29)

The driver was issued a citation for inoperable brake lights on the trailer. (Tr. pp. 18, 19)

### *Sergeant Frank Torres*

Approximately 20 minutes after the stop was made, Bocks' supervisor Sergeant Frank Torres arrived to render assistance. (Tr. p. 29-30) Torres informed Bocks that the possession of some cacti is controlled, so Bocks began making calls to the agricultural department. (Tr. p. 34) Torres approached the passenger side of the vehicle and asked the defendant his name. (Tr. p. 35) Torres asked the defendant if he was here illegally, and the defendant admitted that he was. (Tr. p. 36)

Torres was also in a police uniform. (Tr. p. 37) He spoke in a normal conversational voice. (Tr. p. 37)

### *Israel Paramo-Villasana*

The defendant, Israel Paramo-Villasana, testified about the traffic stop. (Tr. p. 45-47) He stated he never thought about leaving the truck after it was stopped "because of the authority of the policeman." (Tr. p. 46) He produced his identification because of Bocks' authority as an officer. (Tr. p. 46-47) Bocks was direct and curt, but did not raise his voice. (Tr. p. 48-49) Paramo-Villasana was not put in handcuffs or formally put under arrest by Bocks, but Bocks did not return his ID card. (Tr. p. 49)

//
//
//

**DISCUSSION: Motion to Suppress**

1   The defendant, Israel Paramo-Villasana, argues his Fourth Amendment rights were violated when he was asked for identification when the vehicle in which he was riding was stopped for a traffic violation. (Doc. 19)

A passenger riding in a vehicle stopped for a traffic violation is seized for the purposes of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2403, 168 L.Ed.2d 132 (2007). This is because a reasonable passenger would not feel free to leave even if the reason for the stop is related to the driving or the vehicle. *Id*. at 257, 2407. Once stopped, the passenger may be asked for identification without triggering a new round of Fourth Amendment analysis. *U.S. v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007), *cert. Denied*, 552 U.S. 1031 (2007).. This is because mere questioning, by itself, does not constitute a Fourth Amendment seizure. *I.N.S. v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984). If the questioning is lengthy, however, the scope of the original seizure could be implicated. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 788 (2009).

In this case, the vehicle in which the defendant was riding was stopped in compliance with the Fourth Amendment. Once stopped, the officer was entitled to ask the defendant passenger for identification. *See Diaz-Castaneda*, 494 F.3d at 1152. There is no indication that these questions unreasonably prolonged the traffic stop. *See Johnson*, 555 U.S. at 333, 129 S.Ct. at 788 ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."); *see also U.S. v. Turvin*, 517 F.3d 1097, 1102 (9th Cir. 2008) ("[F]ourteen minutes is not unreasonably long for a traffic stop."). Accordingly, the defendant's Fourth Amendment rights were not violated.

Finally, the fact that the officers did not read the defendant his *Miranda* rights prior to questioning was not error. A person questioned during a routine traffic stop is not "in custody" for *Miranda* purposes. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150 (1984).

The questioning of the defendant did not violate his Fourth Amendment rights, and his motion to suppress should be denied.

**RECOMMENDATION:**

In view of the foregoing it is recommended that, after its independent review of the record, the District Court **DENY** the motion to suppress. (Doc. 19)  Each counsel may serve and file written objections within 14 days.  If objections are not timely filed, the party's right to de novo review may be waived.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 17th day of February, 2012.

_____
Glenda E. Edmonds
United States Magistrate Judge