IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ISRAEL PARAMO-VILLASANA,<br><br>  Defendant. | No. CR 11-3496-TUC-CKJ (GEE)<br><br>**ORDER** |

On February 17, 2012, Magistrate Judge Glenda E. Edmonds issued an Report and Recommendation (Doc. 32) in which she recommended that the Motion to Suppress Evidence (Doc. 19) filed by Defendant Israel Paramo-Villasana ("Paramo-Villasana") be denied. The Report and Recommendation notified the parties that they had fourteen days from the date of being served with the copy of the Report and Recommendation to serve and file any objections. Paramo-Villasana has filed an objection and the government has filed a response.

*Report and Recommendation*

The magistrate judge determined that a passenger riding in a vehicle stopped by a law enforcement officer may be asked for identification without triggering a new round of Fourth Amendment analysis. *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007), *cert. denied*, 552 U.S. 1031 (2007); *see also I.N.S. v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984) (mere questioning, by itself, does not constitute a Fourth Amendment

1 seizure); *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 788 (2009) (if the
2 questioning is lengthy the scope of the original seizure could be implicated). The magistrate
3 judge determined that, because the vehicle in which Paramo-Villasana was riding was
4 stopped in compliance with the Fourth Amendment and there is no indication that the
5 questions unreasonably prolonged the traffic stop, the officer was entitled to ask Paramo-
6 Villasana for identification.

*Objection to the Report and Recommendation*

Paramo-Villasana asserts that *Diaz-Castaneda* should not control in this case because the officer in *Diaz-Castaneda* had a valid reason for requiring identification of the passenger – whether the passenger could drive the vehicle away. However, although the court in *Diaz-Castadena* acknowledged the fact that the officer wanted to know if the passenger could drive the vehicle, the court did not base its decision on that fact:

> The police may ask people who have legitimately been stopped for identification without conducting a Fourth Amendment search or seizure. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County*, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."); *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."). Here [the officer] wanted to learn not only who the passenger was in a stopped vehicle, but also whether Diaz-Castaneda could drive the truck once [the driver] was arrested. [The officer] was therefore free to ask Diaz-Castaneda for identification without implicating the Fourth Amendment.

*Diaz-Castaneda*, 494 F.3d at 1152-53.

Paramo-Villasana also asserts that *Delgado* should not control in this case because the INS officer in *Delgado* had previously obtained warrants based on a showing of probable cause that undocumented aliens were employed at a factory. Paramo-Villasana also points out that "the Supreme Court acknowledged that a contact between an individual and a police officer would be a detention if a reasonable person would have believed he was not free to leave." Objection, p. 1. The Supreme Court has stated:

> What is apparent from Royer and Brown is that police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are

- 2 -

|   |   |
|---|---|
| 1 | free not to respond, hardly eliminates the consensual nature of the response. *Cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 231–234, 93 S.Ct. 2041, 2049–2051, 36 L.Ed.2d 854 (1973).  Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.  But if the persons refuses to answer and the police take additional steps — such as those taken in Brown — to obtain an answer, then the Fourth Amendment imposes  some minimal level of objective justification to validate the detention or seizure. *United States v. Mendenhall*, [446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)]; *see Terry v. Ohio*, [392 U.S. 1,  21, 88 S.Ct., 1868, 1879, 20 L.Ed.2d 889 (1968). |

*Delgado*, 466 U.S. at 216-17.

In this case, Officer Russell Bocks ("Bocks") testified that he was driving a marked police vehicle equipped with strobe lights, Transcript 2/7/2012 ("Tr."), pp. 11, 22, he was in uniform, Tr., pp. 23-24, he was equipped with a firearm, two magazines, a yellow Taser, a baton, a set of handcuffs, and a portable radio, *id.*.  Bocks also testified that he had requested a license, registrations for the vehicle and trailer, and insurance from the driver and explained that the trailer had a brake light violation.  Tr. p. 14.  Bocks further testified that, while the driver was looking for his documentation, Bocks asked Paramo-Villasana (the passenger) for identification and that Paramo-Villasana gave Bocks a Presbyterian ID card; when asked, Paramo-Villasana told Bocks that he did not have anything else.  Tr. pp. 15-16.

Bocks found nothing outstanding from a wants/warrants search for the driver and passenger.  Bocks  found the Presbyterian ID card suspicious, and he called for the assistance of Border Patrol.  Tr. pp. 16, 31.  Bocks testified that he was professional and calm during the stop and that he did not raise his voice while talking to the defendant.  Tr. pp. 30-31. Bocks also testified that, had Paramo-Villasana exited the vehicle and walked to the nearby McDonalds before Bocks had spoken to him, Bocks would have allowed Paramo-Villasana to do so, but that he did not specifically tell Paramo-Villasana that he was free to go.  Tr. pp. 28-29.

Sergeant Frank Torres testified that he asked Paramo-Villasana his name.  Tr. p. 35. Torres also asked him whether he had any government issued identification or whether he

- 3 -

1 was here illegally; Paramo-Villasana informed Torres that he was not here legally.[1]  Tr. pp.
2 35-36.

3       Paramo-Villasana testified that did not think about leaving the truck after it was
4 stopped because of the authority of the officer, Tr. p. 46, he produced his identification
5 because of the officer's authority, Tr. p. 46-47, the officer was direct and curt, but did not
6 raise his voice, Tr. p. 48-49), Paramo-Villasana was not put in handcuffs or formally put
7 under arrest, Tr. p. 49, and the officer did not return Paramo-Villasana's ID card, Tr. p. 49.

8       The fact that Paroma-Villasana responded to the officers' questions does not eliminate
9 the consensual nature of the response.  The circumstances of the encounter were not so
10 intimidating that a reasonable person would have believed he was not free to leave if he had
11 not responded.  Indeed, the circumstances and requesting of the passenger's identification
12 seem to have constituted a fairly typical stop.  *See e.g., United States v. Pena-Montes*, 589
13 F.3d 1048, 1059-60 (10th Cir. 2009) ("[t]ypically after a traffic stop an officer is permitted
14 to engage in a host of investigatory activities[,]" including asking "the passengers for their
15 identification and [running] a background check on them"); *United States v. Traylor*, 2:10-cr-
16 00429-RLH-PAL, 2011 WL 4916609 * 6 (D.Nev. 2011) (officer testified that passenger
17 presenting identification is a normal part of a traffic stop).

18       Paramo-Villasana also asserts that the magistrate judge did not address the recent
19 rulings of the United States District Court and United States Court of Appeals in *United*
20 *States v. State of Arizona*, "which addressed (in the context of recent Arizona legislation
21 rather than a specific case) the question of whether police officers may simply demand a
22 person's "papers" without any justification." Objection, p. 2; *see United States v. Arizona*,
23 641 F.3d 339 (9th Cir. 2011).  The government asserts, however, that "the officers here were
24 not acting pursuant to the legislation that had not been codified at issue in that case. Rather,
25 the officers here lawfully initiated a traffic stop based upon probable cause from an observed

26

---

27       [1]Torres also testified that he had informed Bocks that the possession of some cacti was controlled, so Bocks contacted the agricultural department. *See* Tr. pp. 34, 38; *see also* Tr.
28 p. 13, Ex. 6.

- 4 -

violation of a traffic violation. *Whren v. United States*, 517 U.S. 806 (1996). Here, Officer Bocks acted pursuant to Arizona Revised Statute § 28-929.6b which require that a trailer's brake lights be operable. The officer's actions were reasonable for purposes of the Fourth Amendment. *Id.* at 810." Response, pp. 1-2.

The Court agrees with the government that the actions of the officers were not pursuant to the legislation discussed in *United States v. Arizona*. Indeed, that legislation states *inter alia*:

> For any lawful stop, detention or arrest made by [an Arizona] law enforcement official or a law enforcement agency . . . in the enforcement of any other law or ordinance of a county, city or town [of] this state where reasonable suspicion exists that the person is an alien and is unlawfully present in the United States, a reasonable attempt shall be made, when practicable, to determine the immigration status of the person, except if the determination may hinder or obstruct an investigation.

S.B. 1070, § 2(B), *as stated in United States v. Arizona*, 641 F.3d at 346 n. 5. The officers did not testify that questions were originally addressed to Paramo-Villasana because of the legislation or because reasonable suspicion existed to believe Paramo-Villasana was an alien or unlawfully present in the United States. The Court finds that *United States v. Arizona* does not support Paramo-Villasana's challenge of the officers' questioning of him.

Accordingly, after an independent review, IT IS ORDERED:

1. The Report and Recommendation [Doc. # 32] is ADOPTED.
2. The Motion to Suppress Evidence (Doc. 19) is DENIED.

DATED this 8th day of March, 2012.

_____
Cindy K. Jorgenson
United States District Judge